MICHAEL GEYER

*v.*

JOHN GEYER et al.

[Decided December 25th, 1908.]

1. The presumption that where a husband pays the purchase-money on a purchase of lands and has the conveyance made to the wife is that an advance or settlement was intended and that in such case no trust could result, is not rebutted by proof of declarations made by the wife to the effect that when she died her husband was to have her property, where it appeared that the wife carried out this idea by providing by her will that her husband should have a life estate in all her property, real and personal.

2. Where the wife's will gave the remainder of the estate to her son, who was sole executor of the will, and the son took an assignment of an outstanding judgment against his father, and after negotiations between the father and the son relative to the payment of the judgment, under an execution issued thereon, the son sold the life estate in the realty and took a sheriff's deed therefor, thus giving the son the fee-simple title to the lands and depriving the father of his interest under the will, the transaction will be set aside.

3. The fiduciary relation which exists between the parent and child will not permit a son to take such an unfair advantage of an aged father.

4. The son being the remainderman and executor, and by implication trustee under the will, it became his duty to protect, in so far as he could, the life estate of his father.

5. The son having acquired the fee-simple title applied for a loan on mortgage on the property in question to the mortgagee defendant M. M. committed the transaction of the business on her part to the solicitors who had acted as the solicitors of the son in his acquirement of his father's life estate. There was no proof that M., the mortgagee, had any actual knowledge of the son's fraud upon his father, but an attempt was made on the part of the complainant to charge her with notice of the transaction for the reason that the solicitors whom she employed knew about it.— *Held*, this is carrying the doctrine of notice to an agent to an extreme to which the decisions do not now go.

6. The rule now is that the knowledge of the agent is chargeable upon his principal whenever the principal, if acting for himself, would have received notice of the matters known to the agent.

7. If the mortgagee, M.. had acted for herself in the transaction in question she would not have received notice of the matters which were known to the solicitors who acted for her, and therefore their knowledge, if any they had, was not imputable to her.

8. Though the complainant, the father, had been in possession with the other members of his family of the premises intended to be mortgaged, such possession would have been sufficient to charge the mortgagee with notice under the authority of *Rankin* v. *Coar, 46 N. J. Eq. (1 Dick.) 566.*

9. Such mortgage is a lien as between the mortgagee and the complainant upon the complainant's life estate. As between the son and his father, the complainant, a different result would ensue, but the equities between them touching this mortgage lien cannot be worked out in this suit.

10. For the reasons stated in the opinion the son should be required to account in this court for any personal property that passed under the will in order that the rights of the life tenant in all the personalty may be ascertained, and in such account this judgment must be awarded to him.

On final hearing on bill, answer, replication and proofs.

*Mr. Joseph A. Beecher,* for the complainant.

*Mr. Samuel F. Leber,* for the defendants.

Howell, V. C.

In *Read* v. *Huff, 40 N. J. Eq. (13 Stew.) 234,* it was held by our court of errors and appeals that where a parent or husband pays the purchase-money on a purchase of lands and has the conveyance made to a wife or child, the presumption is that an advancement or settlement was intended, and that in such case no trust could result unless the presumption should be rebutted by proof. In this case the lands in question were purchased by the complainant with his own funds and title by his direction was made to his wife who is now dead. An attempt was made to rebut the presumption referred to, but in my opinion the proof is not sufficient for the purpose. It consists wholly of declarations made by the wife to the effect that when she died her husband was to have the property. I do not think this is sufficient under the circumstances of this case, for it appears, as is hereinafter more fully set out, that the wife carried out this idea by providing by her will that the husband should have a life estate in all her property, real and personal. Hence the complainant must fail on this branch of the case.

The wife left a will by which she devised to the complainant a life estate in all her realty and personalty—the same estate in

the realty that he would have had if she had died intestate. The remainder of her estate was given to her son John, who was made the sole executor of the will. After this estate had vested in the life tenant John purchased a judgment which had been recovered many years ago against his father; execution had been issued on it and a levy taken on the life estate and the same had been advertised for sale. At or about the time that John took the assignment of the judgment there was some negotiation between him and his father about the payment of the amount due on the judgment, but the amount was never paid by the father. John then sold the life estate in the realty and bought it in for himself and took a sheriff's deed therefor. This gave John the fee-simple title to the lands and deprived the complainant of his interest under the will.

This transaction must be set aside. The fiduciary relation which exists between a parent and child will not permit a son to take such an unfair advantage of his aged father. The son was the remainderman; he was also executor of his mother's will, and, by implication, trustee thereunder, and it became his duty to protect, in so far as he could, the life estate of his father. The father is about seventy years of age, the son in middle life. They lived together in the same homestead property until long after the death of the mother, and the purchase by the son of the father's life estate when, according to the father's statement, he was ejected by his son from his former home in which he claims the present life estate. All these facts point to the existence of a fiduciary relation in which the son was the fiduciary and the father the beneficiary. The son cannot, by any means known to the law, make a profit out of his position, nor will he be permitted to dissipate or take to himself the property or interests which it is his lawful duty to preserve for his beneficiary. *Huguenin* v. *Baseley, 14 Ves. 273; 2 W. & T. L. C. 597,* and notes.

In the early part of 1908 John Geyer, having acquired the fee-simple title, applied to the defendant Mrs. Michaels for a loan of $800 on mortgage on the property in question, she committed the transaction of the business on her part to the solicitors who had acted as the solicitors of John Geyer in his acquirement of his father's life estate. There is no proof that the mortgagee had

any actual knowledge of the son's fraud upon his father, but an attempt is made on the part of the complainant to charge her with notice of the transaction for the reason that the solicitors whom she employed knew about it. This is carrying the doctrine of notice to an agent to an extreme to which the decisions in our state do not now go. It may be that under the case of *Willard* v. *Denise, 50 N. J. Eq. (5 Dick.) 482,* the position might be maintained, but *Willard* v. *Denise* was overruled in the case of *Vulcan Detinning Co.* v. *American Can Co., 67 Atl. Rep. 339,* and the earlier doctrine announced in *Sooy* v. *State, 41 N. J. Law (12 Vr.) 394,* was re-established. The rule now is "the knowledge of the agent is chargeable upon his principal whenever the principal, if acting for himself, would have received notice of the matters known to the agent." It is quite plain that if the mortgagee had acted for herself in the transaction she would not have received notice of the matters which were known to the solicitor who acted for her.

I must therefore declare that the knowledge of the solicitors, if any they had, was not imputable to the mortgagee.

The time when the complainant was ejected from the premises in question does not appear, but even though he had been in possession with the other members of his family of the premises which were intended to be mortgaged, such possession would not have been sufficient to charge the mortgagee with notice, under the authority of *Rankin* v. *Coar, 46 N. J. Eq. (1 Dick.) 566.*

I must therefore hold that the mortgage is a lien as between the mortgagee and the complainant upon the complainant's life estate. As between John Geyer and his father, the complainant, a different result would ensue, but the equities between John and his father touching this mortgage lien cannot be worked out in this suit.

A single question remains. It appears by the evidence that at the time the father was ejected from the premises by John, the father owned and had in his possession there considerable personal property, consisting of horses, wagons, carts and cows of the value of several hundred dollars. This was retained, so the complainant says, by his son John, and the complainant seeks to have a decree that John should account therefor, and also for

certain moneys received by John, the proceeds of other property sold by him since the death of his mother. Inasmuch as John, the executor, has refrained from filing any inventory of the estate under the will of his mother, or to render any accounts whatever in the proper jurisdiction, he should be required to account here for any personal property that passed under the will in order that the rights of the life tenant in all the personalty may be ascertained. In the accounting the money paid by John for the judgment must be awarded to him.

It appears by the testimony that the horses, wagons, carts and cows which were left upon the place, and which were valued by the complainant at several hundred dollars, were his own property. These items, therefore, cannot be dealt with in this court. If the property belonged to him, and was taken from him by his son John, the only way to recover it is by an action at law.